IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PAUL SEYMOUR,
    Petitioner,

vs.                                        Case No. 3:04cv49/MCR/EMT

DONALD BAUKNECHT, et al.,
    Respondents.
_____/

**REPORT AND RECOMMENDATION**

    This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1). Respondent filed an answer (Doc. 9), and Petitioner filed a response (Doc. 12). This case involves a dispute over Petitioner's entitlement to a discretionary sentence reduction for participation in an approved Residential Drug Abuse Program ("RDAP") under 18 U.S.C. § 3621(e)(2)(B).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that Petitioner is not entitled to relief.

I.    BACKGROUND

    On May 11, 2001, following a guilty plea, Petitioner was sentenced in the United States District Court for the Southern District of Indiana to sixty-three (63) months of imprisonment and three years of supervised release for tampering with a consumer product with reckless disregard for and extreme indifference to the risk of human death or injury, in violation of 18 U.S.C. § 1365(a) (Doc. 1 at 2, supporting memorandum at 1-2). On July 9, 2001, Petitioner reported to the Federal Medical Facility in Lexington, Kentucky, and applied for entry into RDAP (Doc. 1, supporting memorandum at 2). BOP staff notified RDAP staff that the offense for which Petitioner was convicted was not a crime precluding his early release pursuant to § 3621(e)(2) (Doc. 9, Ex. C,

Declaration of David Reince, ¶ 3, Attach. 4). However, on October 29, 2001, RDAP staff issued a Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility stating that although Petitioner qualified for participation in RDAP, he was deemed provisionally ineligible for early release pursuant to § 3621(e) (Reince Decl., ¶ 4, Attach. 2). On November 1, 2001, Petitioner was interviewed for participation in RDAP, at which time he signed a participation agreement, thereby indicating his understanding that if he was deemed eligible for early release under section 3621(e), this determination was provisional and subject to change (Reince Decl., ¶¶ 4, 5, Attach. 1, 7). Approximately two months later, on January 3, 2002, RDAP staff issued a second Notice of Residential Drug Abuse Program Qualification and Provisional § 3621(e) Eligibility stating that Petitioner qualified for participation in RDAP, and that he was provisionally eligible for early release (Reince Decl., ¶ 6, Attach. 3; Doc. 1, supporting memorandum at 2). Petitioner signed the Notice, thereby indicating, "I understand that a determination of early release for me is <u>provisional, may change</u>, and depends on continued positive behavior and successful participation in all components of the program, including community transitional services." (Reince Decl., ¶ 6, Attach. 3).

     Upon Petitioner's transfer to the Federal Prison Camp at Eglin, Florida, BOP staff notified RDAP staff on March 19, 2003, that the offense for which Petitioner was convicted was not a crime precluding his early release pursuant to section 3621(e)(2) (Reince Decl., ¶ 7, Attach. 5). On December 19, 2003, Petitioner completed RDAP and was scheduled to be transferred to a halfway house on April 13, 2004, for continued treatment in a community-based program for a period of six months, at which time he would be released to begin the supervised release portion of his sentence (Doc. 1, supporting memorandum at 3). Indeed the BOP's sentence computation records indicated Petitioner's projected release date was October 9, 2004, one year earlier than his projected statutory release date (Doc. 12, Ex. A). However, on January 14, 2004, Dr. David Reince, Drug Abuse Program Coordinator at Eglin, became aware that Petitioner was convicted of a violation of 18 U.S.C. § 1365(a), which constituted a crime of violence pursuant to BOP Program Statement 5162.04 (Doc. 9, Ex. C, Reince Decl., ¶ 8). Therefore, on that date Dr. Reince issued a Change in Drug Abuse Treatment Program Status Memorandum advising BOP staff that Petitioner was not eligible for early release and instructing them to recompute Petitioner's projected release date

(Reince Decl., ¶ 9, Attach. 6). Petitioner was notified of the change in his eligibility status that same day (*id*.).

On January 20, 2004, Petitioner filed a grievance with the warden at FPC-Eglin. Petitioner filed the instant habeas action on February 10, 2004 (*see* Doc. 1 at 6).

II.    ANALYSIS

In the instant petition, Petitioner challenges the BOP's decision to deny his early release on the grounds that the decision violated the Due Process Clause of the Constitution and federal law. Respondent contends Petitioner failed to exhaust his administrative remedies because he failed to properly appeal to the Office of General Counsel. Additionally, Respondent contends Petitioner's claims are without merit.

In his reply, Petitioner states he has now completed the administrative grievance process, albeit after he initiated the instant habeas action (*see* Doc. 12, Ex. B). Indeed, the attachments to Petitioner's reply show that during the pendency of this action, Petitioner filed appeals with the Regional Director and General Counsel, and the appeals was denied (*id*.). Therefore, this Court concludes Petitioner has satisfied the exhaustion requirement. However, Petitioner has failed to establish he is entitled to habeas relief.

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. § 3621(b). If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§3621(e)(2)(B). Thus, section 3621(e)(2)(B) provides an incentive for inmates to enroll in and complete the treatment program. However, the statute makes <u>permissive</u> the BOP's determination to grant a reduction in sentence upon an inmate's successful completion of an RDAP. When an eligible inmate successfully completes drug treatment, the BOP has the authority, but not the duty, to reduce his term of imprisonment. <u>Lopez v. Davis</u>, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d

635 (2001). Additional regulations to guide the discretionary implementation of the RDAP have been promulgated and are codified in Title 28 C.F.R. § 550 and BOP program statements.

Title 28 C.F.R. § 550.58 provides:

> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, subchapter D for a <u>nonviolent</u> offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible . . . for early release by a period not to exceed 12 months.

(emphasis added). Neither section 3621 nor regulation 550.58 defines "nonviolent offense," thus the BOP filled the statutory gap by designating certain offenses as "Crimes of Violence in All Cases," thereby precluding inmates convicted of those offenses from early release. *See* Federal Bureau of Prisons Program Statement 5162.04, Categorization of Offenses (Oct. 9, 1997). This Program Statement provides that a conviction for violation of 18 U.S.C. § 1365, except 1365(b) or (c), is categorized as a crime of violence in all cases, including for purposes of section 3621(e). BOP Program Statement 5162.04 § 6.a.(1).

In Grounds Two and Three of his habeas petition, Petitioner contends the BOP violated federal law by classifying his crime of conviction as a crime of violence without examining the facts underlying his conviction. He asserts that the facts underlying his conviction do not support a finding that he committed a violent crime. Petitioner further contends Program Statement 5162.04, which categorizes a section 1365(a) offense as a crime of violence in all cases, is "overly broad and vague" and relieves the BOP of its legal duty to consider the factual circumstances of the underlying conviction (*see* Doc. 1 at 4).

When reviewing an agency's construction of a statute it administers, a court must apply the two-part test set forth in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the court must examine the statute itself to determine whether Congress has directly spoken to the precise question. *See* <u>Chevron</u>, 467 U.S. at 842, 104 S.Ct. 2778. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43, 104 S.Ct. 2778. If Congress has not directly addressed the specific question at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843, 104 S.Ct. 2778. "A permissible construction of a statute is a

reasonable one, and an agency's interpretation of an unclear statute is reasonable so long as 'it is not arbitrary, capricious, or clearly contrary to law.'" Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000) (quoting U.S. Mosaic Tile Co. v. Nat'l Labor Relations Bd., 935 F.2d 1249, 1255 (11th Cir. 1991) (citing Chevron, 467 U.S. at 842-45)). Internal agency guidelines, such as program statements, which are not subjected to the heightened scrutiny of administrative rulemaking are not entitled to the "considerable" deference accorded under Chevron. *See* Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). "Instead, interpretations contained in formats such as [policy statements] are 'entitled to respect' under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'" Christensen, 529 U.S. at 587, 120 S.Ct. 1655.

Initially, section 3621(e) does not directly require the BOP to make individual factual determinations of whether an inmate's underlying crime is a nonviolent offense. Furthermore, the Eleventh Circuit has examined the BOP's categorization of certain offenses as crimes of violence for purposes of section 3621(e)(2)(B) and concluded that such categorization is a reasonable interpretation of that statutory program. *See* Cook v. Wiley, *supra*. The Eleventh Circuit upheld Program Statement 5162.02, the predecessor to Program Statement 5162.04, as a valid exercise of the BOP's discretion to "determine those offenses that qualify as nonviolent offenses and those offenses to be excluded" for purposes of early release eligibility.[1] Cook, 208 F.3d at 1318.

Additionally, although the Eleventh Circuit has not addressed whether the categorization of a section 1365(a) violation as a crime of violence is reasonable, the Fourth Circuit has addressed this issue and determined that it is. *See* Cunningham v. Scibana, 259 F.3d 303, 309 (4th Cir. 2001). In Cunningham, the Fourth Circuit identified the purpose of the early release provision as "providing an incentive for certain prisoners to undergo drug treatment while at the same time protecting the public from potentially violent criminals," and the court recognized the BOP's judgment was made in light of that purpose:

> "In characterizing Cunningham's crime as violent in all circumstances, the BOP has determined that society should be afforded all allowable protection from an inmate who has tampered with a consumer product with reckless disregard and extreme

---

[1] Although Cook involved analysis of the 1995 versions of 28 C.F.R. 550.58 and P.S. 5162.02, the amendments to those provisions do not affect the analysis of the issues raised by Petitioner in the instant case.

Case No.:  3:04cv49/MCR/EMT

indifference to the risk that someone could be injured or killed. The BOP, in running the nation's prisons, has accumulated experience and judgment that allows it to make informed decisions about various penological objectives, including punishment and rehabilitation."

259 F.3d at 308 (citation omitted). Furthermore, the Fourth Circuit determined the BOP's decision was supported by sound reasoning: "The BOP explains that because the § 1365(a) crime of consumer product tampering involves the risk of physical injury or death to the victim, the agency considers it to be a crime of violence." *Id.* The court noted that violent crimes were defined in a similar way in other circumstances, as well as in the Oxford English Dictionary. *Id.* at 308-09. Moreover, the court determined the BOP had been consistent in defining a violation of 1365(a) as a crime of violence in its prior program statements. *Id.* at 309. Thus, the Fourth Circuit concluded the BOP's categorization of a section 1365(a) violation as a crime of violence was supported by "experience and sound and consistent reasoning." *Id.*

This Court finds the reasoning of the Fourth Circuit persuasive and concludes that the BOP's categorization of a violation of section 1365(a) as a crime of violence is a reasonable, permissible interpretation of section 3621(e)(2)(B). Accordingly, Petitioner's claim that the BOP may not categorically exclude section 1365(a) violators from sentence reductions, but instead must make an individual determination based upon the facts of an inmate's underlying offense, is without merit.

Likewise, Petitioner's challenge to the BOP's denial of a sentence reduction on due process and ex post facto grounds, set forth in Ground One of his petition, is without merit. Petitioner avers the BOP awarded him "early release credits" upon his completion of RDAP in December of 2003, thus creating a vested right to a one year sentence reduction. He contends the BOP's subsequent denial of the sentence reduction without a hearing violated due process and constituted an ex post facto violation.

It is well settled that because section 3621(e)(2) leaves sentence reductions "to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest." Cook, 208 F.3d at 1323. Furthermore, not awarding a one year sentence reduction does not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Jacks v. Crabtree, 114 F.3d 983, 986 n.4 (9th Cir. 1997), *cert. denied*, 523 U.S. 1009, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998) (citing Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d

418 (1995)). It means only that Petitioner will have to complete his expected sentence. *Id.* Thus, Petitioner's due process claim is without merit. *See also* Zacher v. Tippy, 202 F.3d 1039, 1045 (8th Cir. 2000); McClean v. Crabtree, 173 F.3d 1176, 1184-85 (9th Cir. 1999), *cert. denied*, 528 U.S. 1086,120 S.Ct. 814, 145 L.Ed.2d 685 (2000); Rublee v. Fleming, 160 F.3d 213, 217 (5th Cir. 1998); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998); Jacks, 114 F.3d at 985-986 n.4.

Additionally, Petitioner cannot show that the BOP's changing his eligibility determination violates the ex post facto prohibition of the Constitution. Article I, section 9 of the Constitution prohibits the federal government from enacting ex post facto laws. "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000).[2] The Supreme Court has held that this prohibition applies to statutes, rules and regulations governing administrative agencies. *See* Garner, *supra* (applying ex post facto doctrine to decision of parole board); Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (applying ex post facto doctrine to statute governing early release). Furthermore, the presence of agency discretion "does not displace the protections of the *Ex Post Facto Clause* . . ." Garner, 529 U.S. at 253, 120 S.Ct. 1362. To establish an ex post facto violation, Petitioner must show: (1) the legislative modification is retrospective, that is, it applies to events occurring before its enactment, and (2) the new law creates a sufficient risk of increasing the punishment attached to Petitioner's crime. California Dept. of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) ([T]he focus of the ex post facto inquiry is not on whether a legislative change produces some sort of 'disadvantage' . . . but on whether any such change . . . increases the penalty by which a crime is punishable."); Lynce, 519 U.S. at 444 (ex post facto analysis should focus on "the effect of the law on the inmate's sentence").

In the instant case, Petitioner has failed to show that any legislative enactment was applied to him retroactively. The administrative action taken by Dr. Reince to correct the erroneous eligibility determination made by RDAP staff did not constitute a legislative enactment for purposes of the ex post facto doctrine. Furthermore, to the extent Petitioner contends the program statement

---

[2]Although the Ex Post Facto Clause to which the Supreme Court referred in Garner is the Clause applied to the States, set forth in Article I, section 10 of the Constitution, the analysis of federal and state laws under the respective ex post facto clauses is the same.

Case No.: 3:04cv49/MCR/EMT

categorizing his offense as a crime of violence was applied retroactively in his case, his claim is without merit.  The program statement categorizing his offense as a crime of violence, Program Statement 5162.04, was implemented in 1997, well before Petitioner committed his criminal offense in 2000 (*see* Doc. 9, Ex. A).  Moreover, the denial of eligibility for early release did not alter the definition of Petitioner's criminal conduct or increase the punishment for his crime.  *See* Seacrest v. Gallegos, 30 Fed.Appx. 755, 756, 2002 WL 93138 (10th Cir. 2002); Warren v. Miles, 230 F.3d 688, 692-93 (5th Cir. 2000).  Therefore, Petitioner's ex post facto argument fails.

Finally, Petitioner's claim of breach of contract is not cognizable under section 2241 because it does not allege Petitioner is being held in custody in violation of the laws or constitution of the United States, as contemplated by section 2241.  Even if Petitioner's claim were cognizable, Petitioner has failed to establish the existence of an enforceable "contract."  *See* Seacrest, *supra* (citing Royal v. Tombone, 141 F.3d 596, 603-04 (5th Cir. 1998)).  Under the regulation and in the proper exercise of its discretionary authority, the BOP was not bound in any way to grant Petitioner early release.  Moreover, the participation agreement signed by Petitioner and an RDAP staff member specifically states Petitioner's eligibility status was provisional and subject to change (*see* Doc. 9, Ex. C, Reince Decl., Attach. 7).  Therefore, no contractual obligation existed to maintain Petitioner's eligibility status.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 30th day of March, 2005.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE  JUDGE**

### NOTICE TO THE PARTIES

**Objections to these findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**